**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Richard P Zuckerman,

           Plaintiff,

v.

Lisa Joyner, et al.,

           Defendants.

No. CV-21-01874-PHX-SMM

**ORDER**

Pending before the Court is Defendants Lisa Joyner and Arizona State University's Motion to Dismiss.  (Doc. 50).

## I.    Background and Procedural History

The following allegations from Plaintiff's Amended Complaint are construed in the light most favorable to Plaintiff. At some point in the last few years, Plaintiff Richard Zuckerman attended an Arizona State University (ASU) open-house event, which included a walking tour of campus. (Doc. 48 at 7). During this tour, an as-yet-unidentified representative of ASU told the tour members that "ASU gives more financial aid to students than any other college or university in Arizona." (Id.) Seemingly on the basis, in part, of this statement, Plaintiff applied to ASU, was accepted, and enrolled and attended summer classes during the 2021 summer semester. (Id. at 8).

Ahead of the summer semester, Plaintiff emailed the instructor of an ASU nutrition course that he was considering taking. (Id.) The main purpose of the email was to ask whether the instructor, who Plaintiff noted had a Russian-sounding name, spoke

clear and fluent English. (Doc. 48-1 at 3). Much of the email, however, consists of asides and tangents discussing Plaintiff's political views, medical history, and semi-conspiratorial historical tidbits. (Id.) Among these, Plaintiff's email states that "I'm White (White, an active Republican, MAGA voter, and proud of it and I do not support giving any special preference to Blacks and Spanish!!!!!! As far as I'm concerned, they breed to much, anyway, and they are a STREET CRIME PROBLEM….)" (Id.)

After receiving Plaintiff's email, the nutrition instructor emailed an unidentified ASU official that she was upset at Plaintiff's email. (Doc. 48 at 9). Subsequently, then-Assistant Dean of Students Benjamin Davis informed Plaintiff, via email, of a student disciplinary hearing into whether Plaintiff's email to the nutrition instructor constituted discrimination or harassment. (Id.) Davis informed Plaintiff that ASU would not provide a student legal representative and that it was Plaintiff's responsibility to produce such an advocate, if he wanted one. (Id.) During the hearing, Plaintiff told those in attendance that the email constituted constitutionally protected speech, that he would not apologize, and that he would send the email again. (Id.) Plaintiff also complained of ASU's COVID policy, including their frequent online "health checks," and described COVID-19 as a "gross overreaction." (Id.)

Soon afterward, on August 4, 2021, Davis emailed Plaintiff with the findings of the hearing. (Doc. 48-1 at 4). The ASU office responsible for the investigation and hearing determined that Plaintiff "more likely than not . . . sent an email with discriminatory language regarding the possibly [sic] ethnicity and cultural background of the [nutrition instructor]. The comments were not germane to the class, and very inappropriate." (Id.) As a result, Plaintiff was found to have violated two sections of ASU's student code of conduct. (Id.) Plaintiff was required to attend two online educational video courses (on diversity and on civility and respect), was given an official warning, and was placed on administrative probation until graduation. (Id.)

That same day, Plaintiff received an email from the Dean of Students Office, informing Plaintiff that he had been selected for COVID-19 Community Assessment

testing, which consisted of a free, on-campus saliva test. (Doc. 48-1 at 5-6). Plaintiff took the test. (Doc. 48 at 10-11).

At some point later, Plaintiff emailed the ASU Provost a Notice of Appeal, presumably appealing the findings of the hearing. (Doc. 48 at 10). In response, Davis informed Plaintiff, via email, that no appeal was permitted. (Id.) Plaintiff did not watch the online educational video courses. (Id.) At some point, Davis informed Plaintiff, again via email, that his attendance at ASU was on hold until Plaintiff watched the video courses. (Id.) Plaintiff attempted to withdraw from ASU, using the university's website. (Id. at 11). It is unclear if Plaintiff successfully withdrew. Since then, Plaintiff began receiving letters—it is unclear from whom—warning him to begin making payments on the federal student loan he had taken out to attend ASU for the 2021 summer semester. (Id.) He also received letters from ASU's Business Office, informing him that he owed over $1,7000 and that that number that would increase if he did not begin making loan payments. (Id.)

On August 30, 2021, Plaintiff delivered an Arizona Tort Claims Act Notice of Claim to the Arizona Board of Regents. (Doc. 48 at 11). On October 4, 2021, the Arizona Department of Administration sent Plaintiff a letter denying Plaintiff's claims. (Doc. 48-1 at 8).

On November 5, 2021, Plaintiff filed a *pro se* Complaint in this Court, naming Davis and the Arizona Board of Regents as Defendants. (Doc. 1). On September 2, 2022, Plaintiff filed an Amended Complaint, this time naming as defendants ASU, Lisa Joyner (a Dean of Students at ASU), and the Arizona Board of Regents.[1] (Doc. 48). The Amended Complaint seeks monetary damages, a declaratory judgment, and injunctive relief—seeking ASU to change its regulations. (Id. at 4).

On September 23, 2022, Defendants moved to dismiss Plaintiff's Amended Complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 50 at 1).

---

[1] Although Plaintiff's Amended Complaint lists the Arizona Board of Regents as a defendant, the Arizona Board of Regents had already been dismissed from the case after the Court granted Plaintiff's Motion to Dismiss Arizona Board of Regents as a party. (Doc. 47).

- 3 -

1    Defendants also argue that Defendant Joyner cannot be sued in either her personal or
2    official capacities and that ASU is a non-jural entity that cannot be subject to suit. (Id).
3    Plaintiff did not file a response to this motion and the time to do so has long since passed.
4    See LRCiv. 7.2(c) (opposing party has 14 days after service within which to serve and
5    file a responsive memorandum).

6          Under LRCiv. 7.2(i), if an unrepresented party "does not serve the required
7    answering memoranda, . . . such non-compliance may be deemed a consent to the denial
8    or granting of the motion and the Court may dispose of the motion summarily." *Id*.
9    Because Plaintiff failed to respond to Defendant's motion to dismiss, the Court will
10   construe this as consent to granting the motion.  Moreover, the Court finds that the bases
11   for the Motion are meritorious, as discussed below.

12   **II.      Legal Standard**

13         A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a
14   complaint. Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation omitted). Rule
15   12(b)(6) must be read in conjunction with Rule 8, which requires "a short and plain
16   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
17   8(a)(2); see also Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A
18   complaint need not provide detailed factual allegations but must provide more than
19   "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It must
20   contain factual allegations sufficient to raise a right to relief above the speculative level
21   and to "state a claim that is plausible on its face." Id. at 555, 570. "A claim has facial
22   plausibility when the pleaded factual content allows the court to draw the reasonable
23   inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556
24   U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). A court may dismiss a claim
25   either because it lacks "a cognizable legal theory" or because it fails to allege sufficient
26   facts to support a cognizable legal claim. See SmileCare Dental Group v. Delta Dental
27   Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

28         When a court is deciding a motion to dismiss, "[a]ll allegations of material fact are

taken as true and construed in the light most favorable to the nonmoving party." Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996) (citing Everest & Jennings v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).

Further, where the petitioner is *pro se*, particularly in civil rights cases, [courts have an obligation] to construe the pleadings liberally and to afford the [plaintiff] the benefit of the doubt." Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (citing Jones v. Cmty. Redevelopment Agency, 733 F.2 646, 649 (9th Cir. 1984)).

## III. Discussion

The Amended Complaint's "Basis for Jurisdiction" section lists fourteen state and federal statutes and constitutional provisions. (Doc. 48 at 3). The "Statement of Claim" section lists nine different causes of action, some specific, some vague: "I claim common law tort, state constitutional tort, and federal constitutional tort, for violation of my rights to freedom of speech and expression on college/university campus, retaliation, content discrimination, viewpoint discrimination, and misrepresentation…." (Id. at 4). The Court does its best to match these claims to the statutes and constitutional provisions listed in the "Basis for Jurisdiction" section and liberally construes the Amended Complaint as pleading the causes of action addressed below. However, despite the many claims, statutes, and constitutional provisions provided, the Court finds that Plaintiff's Amended Complaint fails to state a plausible claim and must be dismissed.

### A.   Plaintiff's Amended Complaint Fails to State a Claim

#### 1.   Section 1983

Plaintiff's Amended Complaint alleges a violation of 42 U.S.C. § 1983. (Doc. 48 at 3). To succeed on a § 1983 claim, a plaintiff must show that (1) acts by the defendants; (2) under color of state law; (3) deprived plaintiff of federal rights, privileges or immunities; and (4) thereby caused him damage. Thornton v. City of St. Helens, 425 F.3d

1158, 1164 (9th Cir. 2005) (quotation omitted).

Section 1983 does not itself provide any substantive rights but rather provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and quotation marks omitted). The Amended Complaint references two federal rights: the Fourteenth Amendment's right to due process and the First Amendment's right to freedom of speech and expression. (Doc. 48 at 3). The Court addresses each in turn.

### (a) Due Process

The Amended Complaint states that the Fourteenth Amendment's due process clause serves as a basis for federal question jurisdiction. (Doc. 48 at 3). The Amended Complaint, however, goes no further than this in developing any argument for a claim under that clause. Although the Court can see some potential connection between procedural due process and the process by which Plaintiff was disciplined by ASU, it is unable to reasonably infer based on the pleadings that Defendants are liable under this theory. Plaintiff has failed to provide a cognizable legal theory centered around the denial of due process.

### (b) Freedom of Speech and Expression

Plaintiff appears to allege that his right to free speech was violated when ASU disciplined him for his email to the nutrition instructor. The Amended Complaint, however, provides no theory as to how exactly Defendants did so, or what portions of his email constituted constitutionally protected speech and how.

To establish a First Amendment free speech violation, a plaintiff must provide evidence that (1) he engaged in protected speech, (2) defendants' actions would chill or silence a person of ordinary firmness from future First Amendment activities, and (3) defendants intended to interfere with the plaintiff's First Amendment rights. Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). Evidence of intent may be direct or circumstantial. Id. at 1300-1301.

The Amended Complaint does not allow the Court to reasonably infer that

Defendants are liable for a violation of Plaintiff's right to free speech. Plaintiff's assertion that "[m]y rant in the email to the Nutrition Instructor included matters of public concern which are protected under…federal Constitution Amendment 1 freedom speech," read alongside his factual pleadings, is insufficient in meeting the above-stated elements of a free speech violation. Similarly, his assertion—quoting an English case—that the student disciplinary findings and "punishment[s]" have "disproportionally interfered with [my] right of freedom of expression" is also insufficient in meeting the elements of a free speech violation. Plaintiff does not specify which portions of his email constitute protected speech, does not show how such portions constitute protected speech, does not allege any intent on Defendants' part to inhibit speech, and does not allege that either he or a person of ordinary firmness would be silenced or have their speech chilled by Defendants' actions.

### (c)    Retaliation

In addition, Defendant lists "retaliation" under the Amended Complaint's "Statement of Claim" section. (Doc. 48 at 4). Although it is unclear under what statute this retaliation claim is made, the Court assumes that this is a § 1983 retaliation claim. However, such a claim can only be made in the employment context. See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008) (citation omitted). To establish a § 1983 retaliation claim, a plaintiff must provide evidence that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. Id. Here, Plaintiff's employment is entirely irrelevant and thus Plaintiff cannot state a plausible § 1983 retaliation claim.

### 2.    Other Federal Claims

The Amended Complaint lists three other federal statutes under its Basis for Jurisdiction section: 20 U.S.C. § 1011(a), 42 U.S.C. § 12101 et seq., and 28 U.S.C. § 1367. (Doc. 48 at 3). The latter does not provide a cause of action but instead provides federal courts with supplemental jurisdiction over state law claims in certain situations. These statutes are not addressed elsewhere in the Amended Complaint. However, due to

its obligation to construe *pro se* Plaintiff's pleadings liberally, the Court will read the Amended Complaint as alleging causes of action based on both 20 U.S.C. § 1011(a) and 42 U.S.C. § 12101 et seq.

### (a)    20 U.S.C. § 1011(a)

20 U.S.C. § 1011(a) provides that "institutions of higher education receiving Federal financial assistance may not use such assistance…to undertake any study or project or fulfil the terms of any contract containing an express or implied provision that any person…of a particular race, religion, sex, or national origin be barred from performing such study, project, or contract…." This provision is part of the Drug Free Schools and Communities Act, which does not provide a private cause of action. D.D. v. Stockton Univ., CV18-13506, 2019 WL 3369709 (D. N.J. July 26, 2019).  Further, even when viewing Plaintiff's factual pleadings liberally, the Court cannot find any connection between those facts and this statute. Plaintiff has failed to present a cognizable legal theory or allege sufficient facts to support a cognizable legal claim under this statute. As such, the Court dismisses Plaintiff's claim based on 20 U.S.C. § 1011(a), if indeed one is alleged.

### (b)    ADA

42 U.S.C. § 12101 et seq. is the Americans With Disabilities Act ("ADA"). The ADA provides multiple causes of action and relevant to these factual pleadings is a failure to accommodate claim. See, e.g., Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1269 (9th Cir. 2009) (listing the elements of an ADA retaliation claim in the employment context, which is not relevant here). To establish a prima facie failure to accommodate claim under the ADA in a non-employment context such as this, a plaintiff must show that (1) he is disabled within the meaning of the ADA, (2) he was denied a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services, and (3) the program providing the benefit is a public entity. Csutoras v. Paradise High Sch., 12 F.4th 960, 968-69 (9th Cir. 2021) (citation omitted). When the plaintiff is a private plaintiff seeking monetary damages, as is the case here, he

must prove a *mens rea* of intentional discrimination, which may be met by showing deliberate indifference. Id. at 969 (quoting A.G. v. Paradise Valley Unified Sch. Dist. No 69, 815 F.3d 1195, 1204 (9th Cir. 2016)).

To establish the first element, that a plaintiff is disabled within the meaning of the ADA, a plaintiff must show that he has a physical or mental impairment that substantially limits one of more of his major life activities. Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 994 (9th Cir. 2004). Here, Plaintiff—in his email to the nutrition instructor—claims that he has been given the status "Disabled American Veteran rated 100% BiPolar Disorder from 20 years ago…" (Doc. 48-1 at 3). It is unclear if Plaintiff alleges that he still has a mental illness. Because a motion to dismiss requires the Court to consider Plaintiff's factual allegations in the light most favorable to him and because we must liberally construe his *pro se* pleadings, the Court finds that Plaintiff's Amended Complaint has sufficiently pled the first element.

The Amended Complaint, however, does not otherwise provide factual or legal allegations sufficient for this Court to reasonably infer that Defendants are liable under this theory. Plaintiff does not point to any accommodation that he sought or was denied. Even under the liberal pleadings standards this Court must apply, the fact that he may suffer from a mental illness is insufficient to hold up a legally cognizable theory under the ADA. The Court therefore dismisses without prejudice any claims that the Amended Complaint makes under the ADA.

### 3.    State Law Claims

The Court thus dismisses Plaintiff's federal claims, leaving a handful of state law claims. A district court may decline to exercise supplemental jurisdiction over supplemental state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, when federal claims are dismissed before trial, pendant state claims should also be dismissed. Religious Tech. Ctr. V. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992) (quoting Jones v. Cmty. Redevelopment Agency, 733 F.2d at 651). Because this Court dismisses Plaintiff's

federal law claims, it will also dismiss his state law claims.

## B.  Lisa Joyner

Plaintiff is suing Defendant Lisa Joyner in both her personal and official capacities. (Doc. 48 at 4). Defendants argue that Joyner should be dismissed with prejudice as a party in both capacities. (Doc. 50 at 4). However, Defendants base their argument solely around Plaintiff's § 1983 claims. (Id. at 4-5). Because Plaintiff asserts non-§ 1983 claims and Defendants' arguments here focus exclusively on that statute, the Court will not dismiss Joyner as a party.

## C.  ASU is a Non-Jural Entity

Finally, Defendants move to dismiss ASU with prejudice because it is a non-jural entity and not subject to suit. (Doc. 50 at 6). Under Arizona law, a governmental agency may only be sued if the state statute that created the agency provides as such. Cohen v. Ariz. State Univ., CV21-1178-PHX-GMS, 2022 WL 1747776, at *8 (D. Ariz. May 31, 2022); Braillard v. Maricopa Cnty., 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). The statute responsible for creating ASU does not so provide. A.R.S. § 15-1601; Cohen at *8. Consequently, ASU may not be sued. Cohen at *8; Krist v. Arizona, No. CV17-2524 PHX DGC, 2018 WL 1570260, at *2 (D. Ariz. Mar. 30, 2018).

Even if the Amended Complaint did plausibly state a claim, ASU is a non-jural entity that may not be sued. The Court will dismiss it from the case with prejudice.

## IV.  Conclusion

In light of the foregoing, and because when granting a 12(b)(6) motion to dismiss, a District Court must sua sponte give Plaintiff leave to amend if any amendment would not be futile, Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc),

**IT IS HEREBY ORDERED granting** Defendants' Motion to Dismiss. (Doc. 50).

///

///

///

1        **IT IS FURTHER ORDERED dismissing with prejudice** Defendant Arizona
2   State University as a defendant and **directing** the Clerk of the Court to dismiss Arizona
3   State University as a Defendant.
4        **IT IS FURTHER ORDERED dismissing without prejudice** and with leave to
5   amend Plaintiff's Amended Complaint. (Doc. 48).
6        **IT IS FURTHER ORDERED** that Plaintiff has until <u>December 23, 2022</u> to file a
7   second amended complaint.
8        Dated this 9th day of December, 2022.
9
10  _____
11      Honorable Stephen M. McNamee
        Senior United States District Judge
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28